UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

RONALD LOWREY,

    Plaintiff,

v.

RK ADMINISTRATIVE SERVICES,

    Defendant.

Case No. 2:21-cv-5573
JUDGE SARAH D. MORRISON
Magistrate Judge Chelsea M. Vascura

## ORDER

Ronald Lowrey filed this action against his former employer RK Administrative Services ("Rural King") alleging disability discrimination, retaliation, and interference with his FMLA rights. Rural King moves to dismiss the action, arguing that Mr. Lowrey fails to state a claim. Mr. Lowry opposes Rural King's motion and alternatively seeks leave to file a second amended complaint. For the reasons set forth below, Rural King's Motion to Dismiss (ECF No. 19) is **GRANTED** and Mr. Lowrey's Motion for Leave to Amend His Complaint is **DENIED**. (ECF No. 21.)

### I. BACKGROUND

The following factual allegations, taken from the First Amended Complaint (ECF No. 12), are considered as true. *See Gavitt v. Born*, 835 F.3d 623, 639–40 (6th Cir. 2016).

Mr. Lowrey worked for Rural King as a trailer mechanic beginning in August 2018, until he was terminated two years later. (ECF No. 12, ¶ 15.)

### *Lowrey's difficulties at Rural King*

During his tenure, Mr. Lowrey was involved in various disputes with his co-workers and managers. While he singles out one of his managers (Michael Crum, then the transportation manager) as setting him up to be terminated, he has many complaints about Rural King, including:

1. When Lowrey was hired, he was promised that he would be paid $17 an hour but, when he started working, he was paid only $16 an hour. (*Id.* at ¶ ¶ 18, 19.) Despite repeated complaints, Rural King did not pay him at the promised rate until November 2019. (*Id.* at ¶ ¶ 20, 21, 25, 35.)

2. After Rural King increased his pay to $17 an hour, Lowrey asked for backpay for the months when he was not paid at that rate, but he received "no useful response." (*Id.* at ¶¶ 48, 49, 61, 62.)

3. In January 2019, Mr. Lowrey complained to Human Resources that he had not received either a 90-day or 6-month evaluation. (*Id.* at ¶ 23.) He was told that Rural King had changed its policies and he would not receive those evaluations. (*Id.* at ¶ 24.)

4. Several Rural King employees (including Lowrey) overheard a security guard insulting Amish people. (*Id.* at ¶¶ 42-44.) Lowrey made "a protected complaint" about the insults to the foreman. (*Id.* at ¶ 45.)

5. "Early" in his time at Rural King, Lowrey brought his children to work with him (the children stayed in the break area while he was working).

(*Id.* at ¶ 39.) His bosses were aware that he did that even though there was a policy against bringing your family to work. (*Id.* at ¶ ¶ 39-41.) The "no-family-at-work" policy was enforced only against Lowrey, and it was not enforced at all until November 2019 – after Lowrey complained about the security guard insulting Amish people. (*Id.* at ¶ ¶ 42, 46.) Lowry was then "written-up" for violating the policy; he did not bring his children to work again. (*Id.* at ¶ 47.)

6. Around February 2020, Lowrey was put in charge of the shop when the shop manager went to training. (*Id.* at ¶ 50.) While Lowrey was in charge, the foreman allowed Lowrey to take a truck out for a road-test. (*Id.* ¶ 51.) This road-test led to an argument between Lowrey and Crum during which Crum cursed at Lowrey. (*Id.* at ¶¶ 52-60.)

7. Crum refused to pay Lowrey any backpay. (*Id.* at ¶ 62.) Lowrey responded by telling Crum that he would stop doing extra work that he had taken on until he received his backpay. (*Id.* at ¶ 63.) Crum then threatened that Lowrey would be fired if he continued to complain and not do his job – even though Lowrey was meeting with Crum on his personal time and was only saying that he wouldn't take on additional responsibilities. (*Id.* at ¶ ¶ 64, 65.)

8. Lowrey was reprimanded for having his personal truck at the shop, even though Rural King required he use his personal truck for work purposes. (*Id.* at ¶ ¶ 66-68.)

9. In Mid-April 2020, the Rural King security guard accused Lowrey of removing and losing the property gate's chain and locks. (*Id.* at ¶ 73.) In fact, it was Crum that removed the locks. (*Id.* at ¶ 74.)

10. Crum wanted Lowrey to know that he was "being watched" and was setting Lowrey up for termination. (*Id.* at ¶ ¶ 75, 77.)

11. Lowrey had approval to take a day off work but was then written-up for missing work and given a 3-day suspension. (*Id.* at ¶ ¶ 78-85.) A short time later, Lowrey requested vacation time – someone approved for him to take off July 5 through 9, 2020 – but Crum denied the vacation request and said that Lowrey would be terminated if he did not work on July 6. (*Id.* at ¶ ¶ 78-92.)

***Lowrey's medical issues***

Before and during his employment with Rural King, Mr. Lowrey had several hernias. (*Id.* at ¶ 16.) In mid-2019, Mr. Lowrey gave notice to Candace Pierce in HR that he had hernias and would be needing surgery. (*Id.* at ¶ 28.) In November, he again gave notice that he had "an impending surgery" for his hernias. (*Id.* at ¶ 29.) He says that Rural King did not give him information regarding FMLA in response to these notices or at any other time. (*Id.* at ¶ 30.)

Nevertheless, Lowrey's doctor completed forms at Rural King's instructions that set out Lowrey's light-duty restrictions. (*Id.* at ¶ 31.) Lowrey says that he "was to take 6 weeks off for the hernia surgery and recovery," but he only took off the day of his surgery then did light duty work (primarily office work) for Rural King during

4

his recovery. (*Id.* at ¶ ¶ 33, 34.)

### *Lowrey's alleged protected activities*

In July 2020, Lowrey "made formal protected complaints of discrimination and retaliation" to his managers about Crum. (*Id.* at ¶ 94.) He also "reached out" to Gene Dooley, Rural King's logistics director, "about his unpaid back wages and other protected issues." (*Id.* at ¶ 95.) Dooley "agreed that Crum may have done some things wrong" and said he would investigate. (*Id.* at ¶ 97.)

After Dooley referred the matter to Human Resources to investigate, Lowrey "made protected complaints" to someone named Eva but she refused to investigate further or take any action. (*Id.* at ¶ 100.)

### *Lowrey's termination*

On or about August 13, 2020, Lowrey's children's mother was in the employee break area at Rural King. (*Id.* at ¶¶ 101-102.) The children were not with her. (*Id.* at ¶ 105.) However, less than a week later, Lowrey was terminated for bringing his family to work. (*Id.* at ¶ 106.) Lowery claims that his termination was actually "because of his continued protected complaints and his disabilities." (*Id.* at ¶¶ 106-107.)

### *Lowrey begins legal proceedings*

Lowrey now brings claims for disability discrimination under Ohio and federal law (Counts I and II), retaliation (Count III), and unlawful interference with rights under the Family Medical Leave Act, 29 U.S.C. § 2601, *et seq.* ("FMLA")

5

(Count IV). Rural King moves to dismiss all four counts. In opposing Rural King's motion, among other things and in the alternative, Mr. Lowrey seeks leave to amend his complaint.

## II. DISCUSSION

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal alteration and quotations omitted). A complaint which falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The Supreme Court has explained:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotations omitted). The complaint need not contain detailed factual allegations, but it must include more than labels, conclusions, and formulaic recitations of the elements of a cause of action. *Directv, Inc. v. Treesh*, 487 F.3d, 471, 476 (6th Cir. 2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 555).

6

"Under Rule 12(b)(6), a plaintiff with an arguable claim is ordinarily accorded notice of a pending motion to dismiss for failure to state a claim and an opportunity to amend the complaint before the motion is ruled upon." *Neitzke v. Williams,* 490 U.S. 319, 329 (1989). However, the court may deny leave to amend if the proposed amendment would be futile. *Moss v. U.S.*, 323 F.3d 445, 476 (6th Cir. 2003) (citations omitted).

### A. Disability Discrimination Claims

The Americans with Disabilities Act makes it unlawful for an employer to "discriminate against a qualified individual on the basis of disability …." 42 U.S.C. § 12112(a). Likewise, under Ohio's comparable statute, an employer may not, because of the disability of an employee, discharge the employee without just cause. Ohio Rev. Code § 4112.02(A). Ohio courts regard a *prima facie* case under the Ohio statute as "virtually identical" to the ADA's, *Sandinsky v. EBCO Mfg. Co.*, 134 Ohio App.3d 54, 59 (Ohio App. 1999), and "look to regulations and cases interpreting the [ADA] for guidance" in interpreting the Ohio law." *City of Columbus Civil Serv. Comm'n v. McGlone*, 82 Ohio St. 3d 569, 573 (1998). The Court, therefore, will examine Plaintiff's federal and state claims together.

To establish a *prima facie* case of ADA discrimination, a plaintiff must show that "(1) he is disabled; (2) he is otherwise qualified for the position with or without reasonable accommodation; (3) he suffered an adverse employment decision; (4) his employer knew or had reason to know of his disability; and (5) his position remained open." *Hammon v. DHL Airways, Inc.*, 165 F.3d 441, 449 (6th Cir. 1999)

7

(citation omitted). However, as the Sixth Circuit has explained, the *prima facie* case is an evidentiary standard, not a pleading requirement. *Keys v. Humana, Inc.*, 684 F.3d 605, 609 (6th Cir. 2012) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (finding it to be error to require plaintiff to plead a *prima facie* case under *McDonnell Douglas* in order to survive a motion to dismiss)). Thus, "[f]or purposes of Rule 12(b)(6), the Court need only consider whether the amended complaint provides sufficient factual content to present plausible claims under the relevant statutes." *Esparza v. Pierre Foods*, 923 F.Supp.2d 1099, 1105 (S.D. Ohio 2013) (Weber, J.) (citations omitted). "That said, the interpretive guidelines for the federal regulations do envision some threshold consideration of whether a person's medical condition, as alleged, plausibly states a 'disability.'" *Id.* (quoting 29 C.F.R. § 1630.2(j)(1)(iv)).

In this case, Mr. Lowery fails to state a claim under the applicable standards because he has failed to allege a qualifying disability protected under the ADA.

For purposes of the ADA, "disability" means "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment...." 42 U.S.C. § 12102(a).[1] Paragraph (C) does not apply to impairments that are "transitory and minor," with "transitory" meaning six months

---

[1] Ohio's disability discrimination law defines "disability" as "a physical impairment that substantially limits one or more major life activities ... or being regarded as having a physical or mental impairment." Ohio Rev. Code § 4112.01(A)(13).

8

or less. 42 U.S.C. § 12102(3)(B); *see also Esparza,* 923 F.Supp.2d at 1104.

To determine whether a plaintiff has a substantial limitation on a major life activity, the Court must consider the nature and severity of the impairment, the duration or expected duration of the impairment, and the permanent or long-term impact of or resulting from the impairment. 29 C.F.R. § 1630.2(j)(2). Temporary disability while recuperating from surgery is generally not considered a disability under the ADA. 42 U.S.C. § § 12102(2), (3)(B); *Rebarchek v. Farmers Co-op. Elevator & Mercantile Ass'n*, 60 F.Supp.2d 1145, 1151-52 (D. Kan. 1999) (employee's back injury was not an ADA "disability": although back injury required surgery and employee was given certain restrictions while recovering from surgery, there was no evidence that his restrictions were expected to be permanent or that his condition was expected to result in a permanent or long-term impairment of his ability to engage in major life activities).

Mr. Lowrey's alleged disability is "hernias." He alleges that he had to have surgery and then had to take six weeks off for his recovery. He also alleges that he had to perform light duty work during his recovery. Even assuming these allegations to be true, because Mr. Lowrey's hernias were corrected by surgery, they were temporary and did not substantially limit his major life activities – he does not allege otherwise. Nor does he allege that Rural King regarded his hernia as limiting his major life activities. Under similar factual circumstances, this and other courts have consistently held that having a hernia is not a disability under the ADA. *See*, *Green v. Rosemont Indus., Inc.*, 5 F.Supp.2d 568, 572-73 (S.D. Ohio 1998) (Spiegel,

J.); *Gonzalez v. Perfect Carton Corp.*, No. 95 C 5476, 1996 WL 89058, at *2 (N.D. Ill. Feb. 28, 1996) (citation omitted) (hernias are within the category of temporary, non-chronic impairments of short duration that the EEOC has deemed beyond the coverage of the ADA); *Peoples v. Langley/Empire Candle Co.*, No. 11-2469-CM-JPO, 2012 WL 171340, at *2-3 (D. Kan. Jan. 20, 2012); *Williams v. Fred Meyer Stores, Inc.*, No. C07-5013 RBL, 2008 WL 65507, at *2 (W.D. Wash. 2008); *Lundberg v. Burlington N. & Santa Fe Ry. Co.*, No. CIV.01-2286 (DWF/JSM), 2003 WL 21402605, at *5 (D. Minn. June 17, 2003); *Johnson v. City & Cnty. of San Francisco*, No. C 00-0221 JL, 2001 WL 263298, at *5 (N.D. Cal. Mar. 8, 2001). Mr. Lowrey has not given the Court any reason that his hernia is different than the hernias in those cases.

And, for the same reasons, amendment of Mr. Lowrey's First Amended Complaint with regard to this disability claims would be futile; his Complaint cannot be saved by an amendment.

Accordingly, the First Amendment Complaint fails to state a claim for disability discrimination and Rural King's Motion to Dismiss these claims is **GRANTED**.

    **B.**    **Retaliation Claim**

The ADA and Ohio law also prohibit discrimination "against any individual because such individual has opposed any act or practice made unlawful by this chapter...." 42 U.S.C. § 12203(a); Ohio Rev. Code § 4112.02(I).

Establishing a *prima facie* case of retaliation requires a showing that (1) the plaintiff engaged in protected activity; (2) the employer knew of that activity; (3) the employer took an adverse action against plaintiff; and (4) there was a causal connection between the protected activity and the adverse action. *Rorrer v. City of Stow*, 743 F.3d 1025, 1046 (6th Cir. 2014); *Johnson v. Univ. Hosps. Physician Servs.*, 617 F.App'x 487, 492 (6th Cir. 2015). Like an ADA discrimination claim, a plaintiff is not required to plead all of the elements of a *prima facie* case to survive a motion to dismiss. "[S]o long as a complaint provides an adequate factual basis for [an ADA retaliation] claim, it satisfies the pleading requirements of Federal Rule of Civil Procedure 8(a)(2)." *Serrano v. Cintas Corp.*, 699 F.3d 884, 897 (6th Cir. 2012).

In this case, it is not clear whether Mr. Lowery engaged in ADA-protected activity. Rather, he only specifically alleges he complained about (1) Rural King not paying him at the promised rate (ECF No. 12, ¶ ¶ 20, 26); (2) a security guard insulting Amish people (*Id*. at ¶ ¶ 42-45); and (3) Rural King not paying him backpay (¶ ¶ 61-64). None of these complaints are protected by the ADA or the related state disability statute.

Mr. Lowrey generically alleges that he made "complaints of discrimination and retaliation" but it is unclear from the First Amended Complaint what these complaints were or whether these complaints would be protected complaints. (*See*, ECF No. 12, ¶ ¶ 94, 100, 110, 131.) These generic allegations are insufficient to allow this Court to draw the necessary inference from the factual material stated in the First Amended Complaint that the plausibility standard has been satisfied.

11

Similarly, Mr. Lowrey's generic allegations of a causal connection between his protected activity and any adverse employments taken against him are insufficient.

With regard to Mr. Lowrey's claim for retaliation, his proposed Second Amended Complaint suffers from similar defects as his First Amended Complaint – he only generically alleges that he made "a formal complaint of ongoing disability discrimination and retaliation." (*See*, ECF No. 21-1, PageID 205.)

Accordingly, the First Amended Complaint fails to state a claim for disability retaliation and Rural King's Motion to Dismiss this claim is **GRANTED**. (ECF No. 19.)

### C. Interference with FMLA Rights Claim

For his final claim, Mr. Lowrey alleges that he was unable to receive FMLA benefits and that Rural King interfered with his exercise of his FMLA rights by refusing to provide him with information pertaining to FMLA leave and/or refusing to allow him to take FMLA leave.

Under the FMLA, qualifying employees are entitled to twelve weeks of unpaid leave each year to be used in cases of the employee's serious health condition, the serious health condition of an immediate family member, the birth of a son or daughter of the employee, or the placement of a son or daughter with the employee for adoption or foster care. 29 U.S.C. § 2612(a)(1). Congress enacted the FMLA to address, *inter alia,* "inadequate job security for employees who have serious health conditions that prevent them from working for temporary periods."

12

29 U.S.C. § 2601(a)(4). The FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA]." 29 U.S.C. § 2615(a)(1).

An FMLA interference claim consists of the following elements: (1) plaintiff is an eligible employee; (2) the defendant is an employer within the meaning of the FMLA; (3) the employee is entitled to leave under the FMLA; (4) the employee gave the employer notice of his intention to take leave; and (5) the employer denied the employee benefits to which he was entitled under the FMLA. *Cavin v. Honda of America Mfg., Inc.*, 346 F.3d 713, 719 (6th Cir. 2003).

Mr. Lowrey's interference claim fails, and is not cured in the proposed amended pleading, because he does not allege that he was denied FMLA leave to which he was entitled. In so concluding, the Court recognizes that the Sixth Circuit has rejected hyper-formal interpretations under the FMLA and that eligible employees "need not invoke the FMLA by name in requesting leave for an FMLA-qualifying reason." *Carmen v. Unison Behavioral Health Group, Inc.*, 295 F.Supp.2d 809, 814 (N.D. Ohio 2003). Rather, "the critical question is whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a [qualifying reason]." *Moorer v. Baptist Mem. Health Care Sys.*, 398 F.3d 469, 488 (6th Cir. 2005) (citation and quotations omitted). But Mr. Lowrey's "bare and conclusory" allegations that he "was to take six weeks off for the hernia surgery and recovery," but he "only was off work for the day" are insufficient even under a relaxed interpretation of the elements of an FMLA claim –

13

there are no allegations that he requested FMLA-qualifying time off or that Rural King denied him such leave that he requested. (ECF No. 12, ¶ ¶ 33-34.) His proposed pleading fares no better, for there he alleges only that he "inquired about FMLA leave…." (ECF No. 21-1, PageID 209.)

Accordingly, Rural King's Motion to Dismiss this claim is **GRANTED**.

### III.  CONCLUSION

For the above reasons, Rural King's Motion to Dismiss (ECF No. 19) is **GRANTED** and Mr. Lowrey's Motion for Leave to Amend his Complaint (ECF No. 21) is **DENIED**.

**IT IS SO ORDERED.**

                                           s/ Sarah D. Morrison
                                           **SARAH D. MORRISON**
                                           **UNITED STATES DISTRICT JUDGE**